IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

PLAYBOY ENTERPRISES INTERNATIONAL, INC.,

                *Plaintiff*,

v.

MEDIATAKEOUT.COM LLC

                *Defendant*,

Case No.: 1-15-cv-07053 (PAE)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MEDIATAKEOUT.COM LLC'S MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12 (B) (6), OR, IN THE ALTERNATIVE, RULE 56 OF THE FEDERAL RULES OF CIVIL PROCEDURE**

      Defendant, Mediatakeout.com LLC ("Mediatakeout") by and through its undersigned counsel, hereby submits the instant memorandum of law in support of its motion to dismiss the Plaintiff's Complaint filed by Playboy International Enterprises Inc. ("Plaintiff") on or about September 8, 2015 in the above-captioned action pursuant to Rule 12 (b) (6) of the Federal Rules of Civil Procedure ("FRCP").

**TABLE OF CONTENTS**

PAGE

I.    PRELIMINARY STATEMENT ……………………………………….4
II.   FACTUAL BACKGROUND…………………………………………..5
III.  STATEMENT OF APPLICABLE LAW………………………………..5
      A.  Standard on Motion to Dismiss Pursuant to FRCP 12 (b) (6).….6
      B.  Using The Affirmative Defense of Having A License At
          Motion to Dismiss Stage………………………………………..6
      C.  Fair Use at the Motion to Dismiss Stage……………………….6
IV.   ARGUMENT…………………………………………………………..7
      A.  Plaintiff Cannot State a Plausible Claim for Relief Under
          Copyright Infringement With Respect To The Azealia Banks
          Image, Labeled Playboy April 2015 TOC Because The Work Is
          Not Registered With The U.S. Copyright Office ……………....7
      B.  As To The Registered Works, The Plaintiff Cannot prevail on a
          claim for Copyright Infringement Because Mediatakeout Had A
          License to Use The Plaintiff's Images…………………………..8
      C.  The Plaintiff Cannot State a Plausible Claim for Relief Under
          Copyright Infringement Because MediaTakeout's Use of The
          Images is Also Protected by Fair Use……………………..……9
          1.  The First Factor of Fair Use: the purpose and character of
              the use, including whether such use is of a commercial
              nature or is for non-profit educational
              purposes…………………………………………….……10
          2.  The Second Factor in Fair Use: The Nature of the
              Copyrighted Work………………………………………12
          3.  The Third Factor In Fair Use: The Amount and
              Substantiality of the Portion Used in relation to the
              Copyrighted Work as a Whole………………………….12
          4.  The Fourth Factor in Fair Use: The Effect of the Use Upon
              the Potential Market For or Value of the Copyrighted
              Work…………………………………………………….13
      D.  The Plaintiff May Not Make A Claim Under The Digital
          Millennium Copyright Act 17 U.S.C. 1202 With Respect To
          The Azealia Banks Image, Labeled Playboy April 2015 TOC
          Because The Work Is Not A Registered Work With The U.S.
          Copyright Office……………………………………………..14
      E.  The Plaintiff Cannot prevail on a Claim for Violation Under
          The Digital Millennium Copyright Act 17 U.S.C. 1202 Because
          the Plaintiff's Claim Fails To Meet The Requirements of The
          Statute…………………………………………………………14
V.    CONCLUSION………………………………………………………..15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **PAGE**

*Agence Fr. Presse v. Morel*, 769 F.Supp.295 at 305 (S.D.N.Y 2011)……………..15
*Blanch v. Koons* 467 F.3d 244 at 256 (2d. Cir. 2006)………………………………..12
*BWP Media USA, Inc. v. Gossip Cop Media*, LLC 87 F. Supp. 3d 499…………….8
*Campbell v. Acuff-Rose Music Inc,* 501 U.S. 569 (1994)………………………10, 11,13
*Cariou v. Prince,* 714 F.3d 694 at 710 (2d. Cir. 2013)……………………………12, 13
*Davis v. Blige,* 505 F.3d 90 at 100 (2d. Cir. 2007)………………………………….9
*Jasper v. Sony Music Entertainment*, Inc 378 F. Supp. 2d 334 (S.D.N.Y)……….9
*Lane v. Knowles-Carter*, 116 U.S.P.Q. 2D (BNA) (S.D.N.Y. 2015) ……………8
*Reed Elsevier, Inc v. Muchnick*, 559 U.S. 154, at 166, (2010)…………………….7
*Ritani*, *LLC v*. *Aghjayan*, et al., 2013 WL 4856160 at 9 (S.D.N.Y)………………..6
*Scott v. WorldStarHipHop,* 2011 WL 5082410, at 8 (S.D.N.Y., Oct. 25 2011) …...6
*Spinelli v. NFL*, 96 F.Supp.3d 81 at 121 (S.D.N.Y 2015)………………………….6
Thron *v. HarperCollins Publrs,* 2002 U.S. Dist. Lexis 13670 (S.D.N.Y 2002)…..15
*Wu. v. Pearson Educ. Inc*., 2013 WL 145666……………………………………….4

**Statutes**

17 U.S.C. Section 411…….……………………………………………………...7
17 U.S.C. Section 1202 …………………………………………………………15

## I. PRELIMINARY STATEMENT

This is a copyright infringement action brought before this Court by the Plaintiff against Mediatakeout, an urban celebrity news website, for its use of three photos the Plaintiff claims to own of the rapper, Azealia Banks. In this action the Plaintiff alleges copyright infringement of the photos and violation of Digital Millennium Copyright Act ("DMCA") 17 U.S.C. Section 1202. The Plaintiff seeks damages.

The Plaintiff's claims against Mediatakeout as to copyright infringement and for relief under DMCA 17 U.S.C. Section 1202 are fatally flawed and must be dismissed pursuant to (12) (b) (6) of the FRCP.

First, as to the claim of copyright infringement, one of the Plaintiff's images referenced in this action is an unregistered work. Pursuant to Section 411 of the Copyright Act, registration is required before a plaintiff can bring an action in Federal Court. Therefore, any action brought in Federal Court for an unregistered work must be barred as a matter of law.

Second, the Plaintiff alleges in its Complaint that Mediatakeout's use of the images were "unauthorized" but the Plaintiff expressly gave Mediatakeout permission to use its images and, in doing so, provided it with a license. It is well settled that "a claim for copyright infringement will fail if the challenged use of the copyrighted work is authorized by a license." See *Wu. v. Pearson Educ*. Inc., 2013 WL 145666.

Third notwithstanding Mediatakeout's license to use the above-referenced images, Mediatakeout use of these images also constitutes fair use. Fair use as codified by Congress in 17 U.S.C. Section 107, is a complete and absolute defense to a claim of copyright infringement.

The Plaintiff's claim for relief under DMCA 17 U.S.C. Section 1202 is also fatally flawed in that one of the Plaintiff's images is an unregistered work and the Plaintiff cannot meet the burden of the statute and must be dismissed by the Court pursuant to 12 (b) (6) of the FRCP.

## II. FACTUAL BACKGROUND

Mediatakeout is the leading news source for urban celebrity news. Mediatakeout garners more than 16 million readers a month. In around March 2015, Mediatakeout published an article about the rapper Azealia Banks' upcoming feature in *Playboy* Magazine. The headline read:

> "MTO Exclusive: We Got the UNCENSORED Nekkid Playboy Pics ... of LOUD MOUTH Rapper Azaelia Banks ... And Her Body Looks VERY STRUGGLE!"

In the article, Mediatakeout offered commentary about the rapper's appearance in *Playboy* criticizing her face, hips, butt and breasts. To illustrate its point, it included three pictures of the rapper from *Playboy* magazine. The article also told readers to "Pick up a copy of the issue on NEWSSTANDS THIS WEEKEND - if you want to see the rest of the pics!!"

Following this, on or about September 8, 2015, the Plaintiff brought suit for the above-referenced pictures alleging copyright infringement and violation of the DMCA pursuant to 17 U.S.C. Section 1202.

## III. STATEMENT OF APPLICABLE LAW

    A.    **Standard on a Motion to Dismiss Pursuant to FRCP 12 (b) (6)**

In order to survive a motion to dismiss pursuant to FRCP (12) (b)(6), "a complaint must contain sufficient factual matter accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ritani, LLC v. Aghjayan*, et al., 2013 WL 4856160 at 9 (S.D.N.Y). The plaintiff "must allege sufficient facts to nudge their claims across the line from conceivable to plausible." *Ritani*, LLC, 2013 WL 4856160 at 9 quoting *Twombly*, 550 U.S. at 570. Additionally, while "the court must accept the factual allegations of the complaint as true, it is not bound to accept as true legal conclusions couched as a factual allegation." *Id*.

### B.  Using The Affirmative Defense of Having A License At The Motion To Dismiss Stage

Having a valid license is a complete defense to a claim of copyright infringement. A defendant may use this affirmative defense of having a license at the motion to dismiss stage of the case. See, *Spinelli v. NFL*, where the court held that "a defendant may raise a complete defense to a copyright infringement claim by presenting the court with a license or sublicense on a motion to dismiss." *Spinelli v. NFL*, 96 F.Supp.3d 81 at 121 (S.D.N.Y 2015).

### C.  Fair Use At The Motion To Dismiss Stage

A court may determine the applicability of the fair use doctrine at the motion to dismiss stage when "the defense …appears on the face [of the complaint]." *Scott v. WorldStarHipHop,* 2011 WL 5082410, at page 8 (S.D.N.Y., Oct. 25 2011). Meaning that

when all that is needed to determine the question of fair use is the plaintiff's original work and the defendant's allegedly infringing work, and such works are properly before the court on a motion to dismiss, and can view the two works side-by-side and dispense with further motion practice. See *Cariou v. Prince*, 714 F.3d 694, at 707 (2d. Cir. 2013).

## IV. ARGUMENT

### A. Plaintiff Cannot State a Plausible Claim for Relief Under Copyright Infringement With Respect To The Azealia Banks Image, Labeled Playboy April 2015 TOC Because The Work Is Not Registered With The U.S. Copyright Office

Section 411(a) (b) of the U.S. Copyright Act provides that:

"No civil action for infringement of the copyright in any United States work shall be instituted until pre-registration or registration of the copyright claim has been made in accordance with this title.

In the instant case, the Plaintiff filed a Complaint against Mediatakeout on or about September 8, 2015 alleging copyright infringement for the use of three photos of the rapper Azealia Banks. The photos are identified in the Plaintiff's Complaint as "Playboy April 2015, 07-2126," "Azealia Banks Playboy April 2015, 06-1818" and "Azealia Banks Playboy April 2015, Page 5 TOC." Plaintiff in its Complaint admits that the latter image is an unregistered work and refers to it as the "Unregistered Copyright Work."

Section 411 (a) (b) of the U.S. Copyright Act is clear that the Plaintiff may not seek relief under copyright infringement without registration.

Case law on this topic is also clear. In *Reed Elsevier, Inc v. Muchnick*, 559 U.S. 154, at 166, (2010), the Supreme Court held that the registration requirement of a work is a precondition to filing a claim for copyright infringement. In *Lane v. Knowles-Carter*, 116 U.S.P.Q. 2D (BNA) (S.D.N.Y. 2015), Your Honor also dismissed a plaintiff's claim of copyright infringement in part because the plaintiff did not have a registered copyright of the music and holding further that registration is a requirement before bringing a suit. *Lane v. Knowles-Carter*, 116 U.S.P.Q. 2D at 9 (BNA) (S.D.N.Y. 2015). See also, *BWP Media USA, Inc. v. Gossip Cop Media*, LLC 87 F. Supp. 3d 499 holding that "Although registration is not a requirement for copyright protection…it is a prerequisite for bringing an infringement action in federal court." *BWP Media USA, Inc. v. Gossip Cop Media*, LLC 87 F. Supp. 3d 499

    **B.**    **As To The Registered Works, The Plaintiff Cannot prevail on a claim for Copyright Infringement Because Mediatakeout Had A License to Use The Plaintiff's Images**

To make a prima facie case of copyright infringement, the plaintiff must show (1) ownership of a valid copyright and (2) *unauthorized* copying of the copyrighted work. See *Fox New Network v. TVEyes*, Inc., U.S. Dist. LEXIS 112836, 116 U.S.P.Q.2D (BNA) 1120, Copy. L. Rep. (CCH) P30, 815, 43 Media L. Rep. 2404 (S.D.N.Y. Aug. 25, 2015).

The existence of a license to use copyrighted work is a complete defense to a claim of copyright infringement. *Tasini v. N.Y. Times Co*, Inc. 206 F.3d 161 at 171 (2d. Cir. 1999).

8

In the instant case, the Plaintiff alleges in its Complaint, that Mediatakeout's use of the Azealia Banks images was without authorization. Email communications however between Mediatakeout and Plaintiff's staff show that it had a license to use the Plaintiff's images because "nonexclusive licenses may …be granted orally, or may even be implied from conduct." See *Graham v. James,* 144 F.3d 229 at 235 (2d. Cir. 1998). In the emails, Plaintiff's staff not only thanked Mediatakeout for past use of its images but offered it additional images for *future* use on its website (Exhibit A) provided that Mediatakeout would "credit" *Playboy*.

Mediatakeout's license from the Plaintiff immunizes it from a claim of copyright infringement, under the Court of Appeals' ruling in *Davis v. Blige*, that "a valid license [either exclusive or non-exclusive], immunizes the licensee from a charge of copyright infringement, provided that the licensee uses the copyright as agreed with the licensor." *Davis v. Blige,* 505 F.3d 90 at 100 (2d. Cir. 2007).

In this case, Mediatakeout used the copyrighted work as agreed with the licensor in that it gave credit to the Plaintiff for the use of the images and informed readers when and how to purchase Plaintiff's magazine. Based on this, Mediatakeout had a valid license to use the Plaintiff's images at the time of the alleged infringement and should be exempt from a claim of infringement. Moreover, "it is the hallmark principle of copyright law that licensors may not sue their licensees for copyright infringement." See *Jasper v. Sony Music Entertainment*, Inc 378 F. Supp. 2d 334 (S.D.N.Y).

    **C.**    **The Plaintiff Cannot State a Plausible Claim for Relief Under Copyright Infringement Because MediaTakeout's Use of The Images is Also Protected by Fair Use**

Mediatakeout's use of the images constitutes fair use even if this Court cannot find that it had a valid license to use the Plaintiff's images. Fair use of a copyrighted work is a complete defense to an allegation of copyright infringement.

As set forth in 17 U.S.C. Section 107 "the fair use of a copyrighted work […] for purposes such as criticism, comment, new reporting […] is not an infringement of (1) Under Copyright Law, the Fair Use determination is based on four factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes (2) the nature of the copyrighted work (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.

Fair use allows the user to use copyrighted material without permission of the author when "necessary to fulfill copyright's very purpose, "to promote the progress of Science and useful arts. See, *Campbell v. Acuff-Rose Music Inc,* 501 U.S. 569 (1994).

1. **The First Factor of Fair Use: the purpose and character of the use, including whether such use is of a commercial nature or is for non-profit educational purposes**

The Supreme Court in *Campbell v. Acuff-Rose Music Inc*, held that 2 Live Crew's parody of Roy Orbison's "Pretty Woman" was fair use. The court in its consideration of the first factor in the fair use analysis held that the "central purpose of the first fair use factor is to see whether the new work adds something new, with a further purpose or different character altering the first with new expression, meaning or message; it asks in other words whether and to what extent the new work is *transformative. Campbell v. Acuff-Rose Music Inc.,* 510 U.S. 569 at 579 (1994).

First, Mediatakeout's use of the Plaintiff's images had a different meaning and purpose from the images used by the Plaintiff. Mediatakeout's use of the Azealia Banks' photos was not simply to display the photos or show the rapper's nakedness in the case of *Playboy*, but to inform the public about her appearance in the magazine. Azealia Banks is a rapper and a public figure and information about her is newsworthy and of interest to the urban market. This view is widely shared by media outlets who also published news stories about the *Playboy* spread and used some of the same exact images central to the Plaintiff's claim in this case. For example, Huffingtonpost.com, MTV.com, Billboard.com, The Mirror UK, Gawker.com, Mediaite.com, and Hot 97.com published news articles using one or more of the images for which the Plaintiff is suing Mediatakeout.

Second, Mediatakeout's critique and commentary on Azealia Banks' appearance in *Playboy* added new meaning and/or expression to the images and therefore is transformative news reporting and commentary. In *Campbell*, the Supreme Court held that the parody was transformative in that it "could be perceived as commenting on the original or criticizing it to some degree." *Campbell v. Acuff-Rose Music Inc.*, 510 U.S. 569 at 583 (1994). Here Mediatakeout commented on and criticized Azealia Bank's appearance in the spread - specifically, her face, hips, butt and breasts - and used the photos to illustrate its point. The Court in *Campbell* further ruled that it should not matter whether the comment was "in good taste or bad and should not matter to fair use." *Campbell v. Acuff-Rose Music Inc.,* 510 U.S. 569 at 582 (1994).

Third, as the Court held in *Campbell*, Mediatakeout's for-profit business and commercial use of the images should not preclude a finding of fair use in this case. There the Court ruled:

"the mere fact that a use is educational and not for profit does not insulate it from a finding of infringement, any more than the commercial character of a use bars a finding of fair use. If indeed, commerciality carried presumptive force against a finding of fairness, the presumption would swallow nearly all of the illustrative uses listed in the preamble of paragraph of section 107, including news reporting, comment, criticism, teaching scholarship and research since these activities are generally conducted for profit in this country." *Campbell v. Acuff-Rose Music Inc.*, 510 U.S. 569 at 585 (1994).

2. **The Second Factor in Fair Use: The Nature of the Copyrighted Work**

Mediatakeout's use of the Plaintiff's images was a transformative work. Therefore the second factor will have little value in a finding for or against fair use. See *Blanch v. Koons*, where the Court of Appeals held "the second factor may be of limited usefulness where the creative work of art is being used for transformative purposes." *Blanch v. Koons* 467 F.3d 244 at 256 (2d. Cir. 2006).

3. **The Third Factor In Fair Use: The Amount and Substantiality of the Portion Used in relation to the Copyrighted Work as a Whole**

Mediatakeout's use of the Plaintiff's images is within the scope of fair use under the third factor because its use of the photos was to "fulfill its transformative purpose." Mediatakeout used the Plaintiff's images as part of a news story to tell readers about Azealia Banks' upcoming appearance in the Plaintiff's magazine. Mediatakeout also used the photos to illustrate and support its point that Ms. Banks did not look good in the magazine.

Also, Mediatakeout only used three of the Plaintiff's images even though the magazine published more than ten. Additionally, the Court of Appeals in *Cariou v.*

*Prince*, held the "law does not require that the secondary artist may take no more than is necessary. The secondary use 'must be permitted to conjure up' at least enough of the original to fulfill its transformative purpose." *Cariou v. Prince,* 714 F.3d 694 at 710 (2d. Cir. 2013).

    **4. The Fourth Factor in Fair Use: The Effect of the Use Upon the Potential Market For or Value of the Copyrighted Work**

Mediatakeout's use of the Plaintiff's images has not negatively affected the market value of Plaintiff's images because Mediatakeout and the Plaintiff operate in different markets. In *Campbell*, the Supreme Court held that 2 Live Crew's parody would not likely harm the market for Roy Orbison's original version of "Pretty Woman" "because the parody and the original usually serve different market functions." *Campbell v. Acuff-Rose Music Inc.*, 510 U.S. 569 at 590 (1994).

Similarly in this case, Playboy and Mediatakeout are in different markets. *Playboy* is a magazine showcasing nudity and Mediatakeout is a celebrity news website serving different readers.

In fact, it is likely that Mediatakeout's use of the Plaintiff's images *added* value to the images. Mediatakeout's article about the upcoming Playboy feature, similar to Huffington Post's, Billboard's and others, served to publicize the existence of the "Azealia Banks issue" and likely increased the value of the images.

Notwithstanding the above mentioned factors, the Court of Appeals in *Cariou* held that the "ultimate test of fair use …is whether the copyright law's goal of promoting the Progress of Science and useful Arts…would be better served by allowing the use than

13

by preventing it. *Cariou v. Prince*, 714 F.3d 694 at 706 (2d. Cir. 2013) citing *Castle Rock*, 150 F.3d at 141.

Finding for the plaintiff with respect to fair use would hamper the availability of news to the public. As mentioned above, the images central to this suit were used by dozens of media companies. It is an industry practice for media companies to report on magazine pictorials and use a limited number of the magazine's photos in their articles. A finding against fair use in this case would hamper the ability of the media to provide news to the public and would go against the copyright law's goals of "promoting the progress of science and useful arts." *Id*.

> D.  **The Plaintiff May Not Make A Claim Under The Digital Millennium Copyright Act 17 U.S.C. 1202 With Respect To The Azealia Banks Image, Labeled Playboy April 2015 TOC Because The Work Is Not A Registered Work With The U.S. Copyright Office**

A Plaintiff may not bring a cause of action for violation under the DMCA for an unregistered work. In *Thron v. HarperCollins Publrs*., the court held that the plaintiff's claim under the DMCA was without merit since the plaintiff did not have a valid copyright registration. Holding further that "since the copyright registration was invalid, the information relating thereto did not constitute 'copyright management information' as defined in 17 U.S.C. Section 1202 (c)." See Thron *v. HarperCollins Publrs,* 2002 U.S. Dist. Lexis 13670 (S.D.N.Y 2002).

In the instant case, the Plaintiff also seeks to bring a claim under the DMCA for an unregistered work, which the Plaintiff admits to in its Complaint and refers to the Azealia Banks Image, Labeled Playboy April 2015 TOC a claim as a "Unregistered

14

Copyright Work." As in *Thron*, the Plaintiff's claim under DMCA for this image has no merit and must be dismissed pursuant to (12) (b) (6) of the FRCP.

> **E.     The Plaintiff Cannot prevail on a Claim for Violation Under The Digital Millennium Copyright Act 17 U.S.C. 1202 Because the Plaintiff's Claim Fails To Meet The Requirements of The Statute**

In the instant case, the Plaintiff cannot meet its burden of proving violation under the DMCA 17 U.S.C. Section 1202 and thus its claim here is also without merit.

As set forth in the statute:

" (a) No person shall knowingly and with the intent to induce, enable, facilitate or conceal infringement –

 (1) provide copyright management information that is false, or
 (2) distribute or import for distribution copyright management information that is false.

(b) Removal or alteration or copyright management information. No person shall, without the authority of the copyright owner or the law
 (1) intentionally remove or alter copyright management information;
 (2) distribute or import for distribution copyright management information
knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law"

Here, Mediatakeout made every effort to ensure that readers would know that the photo's where the Plaintiff's. Mediatakeout used the name "Playboy" in the URL, in the article's headline, throughout the text of the article and in the URL of each image.

Mediatakeout was in no way shape or form trying to conceal the fact that these images belonged to the Plaintiff.

Additionally, the Plaintiff's claim that Mediatakeout's watermark on the photos was a violation of copyright management information is also without merit. In *Agence Fr. Presse v. Morel*, the Court held that "DMCA defines CMI information 'conveyed in

connection with copies' of a work – it does not require that the CMI appear on the work itself." Similarly in this case, every information conveyed in connection with the photos were that the images came from *Playboy* magazine. See, *Agence Fr. Presse v. Morel*, 769 F.Supp.295 at 305 (S.D.N.Y 2011).

## V. CONCLUSION

Based on the forgoing, Mediatakeout respectfully requests that this Court (i) dismiss the Plaintiff's Complaint in its entirety with prejudice; (ii) award Mediatakeout its reasonable costs and attorneys' fees incurred in connection with prosecuting the instant motion to dismiss; and (iii) award Mediatakeout any further relief this Court deems just and equitable.