UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

PLAYBOY ENTERPRISES INTERNATIONAL INC.,

                         Plaintiff,

            -v-

MEDIATAKEOUT.COM LLC,

                         Defendant.

------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/8/16

15 Civ. 7053 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Playboy Enterprises International Inc. ("Playboy") brings this action against Mediatakeout.com LLC ("MTO") for copyright infringement arising from MTO's allegedly unauthorized publication, on its website, of three copyrighted photos of the entertainer Azealia Banks. Before the Court is MTO's motion to dismiss. For the following reasons, the motion is denied.

I.    Background

    A.    Facts[1]

Playboy is a "media and lifestyle company that markets the PLAYBOY® brand through a wide range of media properties and licensing initiatives." Compl. ¶ 7. Playboy was the exclusive licensee of three "iconic" photographs of the entertainer Azealia Banks—two nude photos which were registered with the Copyright Office and one non-nude photo which was not registered. *Id.* ¶ 8; *see also id.*, Ex. A (the unregistered photo); Ex. B–C (registration certificates). In March 2015, Playboy discovered that MTO, on its website Mediatakeout.com,

---

[1] This account is drawn from the Complaint. Dkt. 1 ("Compl."). For the purpose of resolving the motion to dismiss, all factual allegations in the Complaint are presumed true. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

had reproduced, distributed, and publicly displayed these images without Playboy's authorization. *Id.* ¶¶ 15–16. In addition, MTO applied its own watermark to the images prior to displaying them. *Id.* ¶ 18; *see also id.*, Ex. D (unregistered photo with MTO watermark).

Based on these allegations, Playboy brings a claim for direct copyright infringement under 17 U.S.C. § 101 *et seq.* and a claim under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202, based on MTO's use of its own watermark on Playboy's images.

### B. Procedural History

Playboy filed the Complaint on September 8, 2015. Dkt. 1. On December 23, 2015, MTO moved to dismiss, Dkt. 18, and filed a supporting memorandum of law, Dkt. 20 ("MTO Br.").[2] On January 13, 2016, Playboy filed an opposition. Dkt. 23 ("Playboy Br."). On January 20, 2016, MTO filed a reply brief. Dkt. 25 ("MTO Reply Br."). On February 25, 2016, the Court held argument, at which the Court informed the parties that it would deny the motion to dismiss and that a written opinion would follow shortly.

## II. Legal Standards on a Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. For the purpose of resolving

---

[2] Dkt. 18 and Dkt. 20, which was filed on December 29, 2015, consisted of the same memorandum, and neither contained a notice of motion. MTO eventually filed a notion of motion on January 20, 2016. Dkt. 24.

the motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  However, that tenet "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

## III.  Discussion

To establish an infringement of a copyright, a plaintiff must show both "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *see also Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 674, 679 (2d Cir. 1998).  As to the second element, a "plaintiff must show both that his work was 'actually copied' and that the portion copied amounts to an 'improper or unlawful appropriation.'"  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (quoting *Castle Rock Entm't Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132, 137 (2d Cir. 1998)).

In the instant motion to dismiss, MTO does not challenge any of these elements, which the Complaint clearly pleads.  MTO raises two principal arguments in favor of its motion to dismiss: that it had a license from Playboy and that its use of the images constituted fair use.[3]

---

[3] The Court rejects the separate, procedural arguments that Playboy advances for denying the motion to dismiss, namely, that MTO failed to file a notice of motion and that MTO's memorandum of law was unsigned in violation of Federal Rule of Civil Procedure 11.  *See* Playboy Br. 7–8.  "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001); *see also Mi-Kyung Cho v. Young Bin Cafe*, 42 F. Supp. 3d 495, 502 (S.D.N.Y. 2013) (overlooking, *inter alia*, failure to file notice of motion).  And, as MTO correctly notes, under Rule 8.1 for using the Court's electronic case filing (ECF) system, "[t]he user log-in and password required to submit documents to the ECF system . . . serve as a signature for purposes of the Federal Rules of Civil Procedure, including Rule 11 . . . ."  MTO Reply Br. 2–3; *see*

### A.     License

The existence of a license may be raised as an affirmative defense to copyright infringement, and "[w]here the dispute turns on whether there is a license at all, the burden is on the alleged infringer to prove the existence of the license." *Tasini v. New York Times Co.*, 206 F.3d 161, 171 (2d Cir. 2000), *aff'd*, 533 U.S. 483 (2001). Dismissal on the basis of a license is proper when "a contract underlying the suit clearly and unambiguously demonstrates the existence of the defendant's license to exploit the plaintiff's copyrights and where plaintiff has not shown any limitation on that license." *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 121 (S.D.N.Y. 2015) (quoting *Ariel (UK) Ltd. v. Reuters Grp. PLC*, No. 05 Civ. 9646 (JFK), 2006 WL 3161467, at *5 (S.D.N.Y. Oct. 31, 2006)) (internal quotation marks and alteration omitted).

Under these standards, MTO falls far short of establishing, at the pleading stage, the affirmative defense that it had a license permitting its use of the Banks photos. The existence of a license is not even suggested by anything in the Complaint itself; there is no whiff of a contract that "clearly and unambiguously demonstrates the existence of [a] license to exploit [Playboy's] copyrights." *Id.* Thus, MTO's only recourse is to rely on matters outside the four corners of the Complaint. To that end, MTO attached to its opening brief an email exchange between an individual named "B Klein," who appears to be connected to Playboy, and a man named Fred Mwangauhunga, who has an MTO email address. *See* MTO Br., Ex. A.

This email exchange is—clearly—not cognizable on the instant motion to dismiss. Matters outside the Complaint may be considered when they are attached to, incorporated by reference in, or so heavily relied upon that they are integral to the Complaint. *See Chambers v.*

---

http://www.nysd.uscourts.gov/ecf_filing.php. Therefore, the Court overlooks the asserted procedural defects and considers MTO's motion to dismiss on the merits.

*Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010). The email exchange is not attached to, referenced in, or integral to the Complaint.[4]

Therefore, MTO's license argument is rejected.

**B.     Fair Use**

Fair use, like the existence of a license, is an affirmative defense. *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 590 (1994). The fair-use defense protects such activities as "criticism, comment, news reporting, teaching . . . , scholarship, or research," and requires a case-by-case analysis of four statutorily enumerated factors: (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes"; (2) "the nature of the copyrighted work"; (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole"; and (4) "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. Fair use may be raised at the motion to dismiss stage if it "appears on the face of the complaint." *Scott v. WorldStarHipHop, Inc.*, No. 10 Civ. 9538 (PKC), 2011 WL 5082410, at *8 (S.D.N.Y. Oct. 25, 2011) (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)). In certain circumstances, fair use may be established at the motion-to-dismiss stage simply by placing the

---

[4] Even if it were cognizable, the email exchange does not, on its face, come close to establishing the existence of a license to use the Banks photos. The exchange took place five months before the events at issue here. It related to different images of a different entertainer. Further, it is between individuals with unknown authority and roles in their respective organizations. It concluded with a mere suggestion that the two correspondents should work together in the future. There is nothing in it that could be mistaken for a blanket authorization for MTO, going forward, to reproduce any Playboy images without specific authorization. And, while licenses may be granted orally or implied by conduct, *Graham v. James*, 144 F.3d 229, 235 (2d Cir. 1998), such a determination will usually—if not always—require development of a factual record and be inappropriate for resolution on a motion to dismiss. MTO's one-sided presentation of an unclear email exchange is far from sufficient.

copyrighted work and the purportedly infringing work side-by-side and comparing their characteristics.  *See Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013).  But "there is a dearth of cases granting such a motion."  *BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015).  Indeed, the fair-use defense is so fact-sensitive that the Second Circuit has instructed district courts to be "cautious" in granting *summary judgment* motions on this issue.  *Wright v. Warner Books, Inc.*, 953 F.2d 731, 735 (2d Cir. 1991); *see also Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006) ("[T]he determination of fair use is an open-ended and context-sensitive inquiry.").

As with MTO's license defense, the factual basis MTO recites for its fair-use defense is provided not by allegations in the Complaint—or by attached, incorporated, or integral materials—but by MTO's own submissions.  Specifically, MTO, in its reply brief, provided the article that accompanied the Banks photos on its website.  *See* MTO Reply Br., Ex. A.  The article consists of the following text:

> [Headline:]  MTO EXCLUSIVE: We Got The UNCENSORED Nekkid Playboy Pics . . . Of LOUD MOUTH Rapper Azaelia Banks . . . And Her Body Looks VERY STRUGGLE!!
>
> [Text:]  It's not like we ain't know what we were getting. But between her PITBULL FACE and the no hips, or butt, or breasts . . . it's all just a real STRUGGLE.
>
> Pick up a copy of the issue on NEWSSTANDS THIS WEEKEND – if you want to see the rest of the pics!!

*Id.* (ellipses in original).  On the basis of this article, MTO argues, *inter alia*, that its use of the Banks photos was transformative because its purpose was "not simply to display the photos or show the rapper's nakedness . . . but to inform the public about her appearance in the magazine."  MTO Br. 11.

6

As with MTO's license claim, the materials on which it relies for this defense—ones that are merely attached to its motion papers—are not cognizable on a motion to dismiss. And, even if they were cognizable, the text of the article that accompanied the publication of Playboy's images, standing alone, would not establish the fact-intensive defense of fair use. *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 808 F. Supp. 2d 634, 641 (S.D.N.Y. 2011) (declining to address "such a fact-intensive issue before the parties have had an opportunity for discovery").

### C. MTO's Other Arguments

MTO raises several other arguments in support of its motion to dismiss, which the Court briefly addresses.

#### 1. Lack of Registration: Copyright Claim

MTO argues that Playboy cannot seek relief for alleged infringement of its unregistered copyright in one of the three Banks photos. MTO Br. 7–8. MTO is correct that plaintiffs ordinarily must register their copyrights before they may file an infringement claim. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 158 (2010). But, as Playboy notes, the Complaint "does not seek judgment let alone damages for copyright infringement of the [unregistered photo]." Playboy Br. 22. This representation is confirmed by a fair reading of the Complaint itself.

#### 2. DMCA Claim

The DMCA prohibits, *inter alia*, "distribut[ing] . . . copyright management information that is false" and "intentionally remov[ing] or alter[ing] any copyright management information" with the knowledge (or with reasonable grounds to know) that doing so will "induce, enable, facilitate, or conceal" an infringement of copyright. 17 U.S.C. § 1202. Copyright management information ("CMI") includes, *inter alia*, the title or other identifying information of the work,

the name of the author or copyright owner, the terms and conditions for use of the work, and identifying numbers or symbols referring to such information.  *See BanxCorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 609 (S.D.N.Y. 2010) (citing 17 U.S.C. § 1202(c)).

The Complaint alleges that MTO applied its own watermark to the photos before publishing them and also altered or removed Playboy's watermark.  Compl. ¶¶ 18–19, 30–31.  Playboy attached to the Complaint a copy of an MTO webpage displaying one of the photos with MTO's watermark.  *Id.*, Ex. D.  Nevertheless, MTO argues that Playboy fails to state a claim under the DMCA because MTO "made every effort" to inform its readers that the photos belonged to Playboy.  MTO Br. 15.  To the extent that this argument rests on facts outside the Complaint—such as the text of the article that accompanied the photos—it is deficient for the reasons reviewed above.  To the extent MTO suggests a good-faith defense to the DMCA claim, or some other factual basis for excusing MTO's application of its own watermark to the photos at issue, any such defense must await development of a factual record.  *See BanxCorp*, 723 F. Supp. 2d at 610 (denying motion to dismiss where plaintiff provided "an actual example of the allegedly infringing ad").

### 3. Lack of Registration: DMCA Claim

MTO argues that Playboy cannot state a claim under the DMCA with respect to the unregistered work because registration is a prerequisite for DMCA claims.  MTO Br. 14–15.  However, "plaintiff's failure to register its copyrighted work is not a bar to a DMCA action." *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 531 n.9 (S.D.N.Y. 2004) (citing *Med. Broad. Co. v. Flaiz*, No. 02 Civ. 8554, 2003 WL 22838094, at *3 (E.D. Pa. Nov. 25, 2003); 3 M. & D. Nimmer, Nimmer on Copyright, § 12A.18[B] (2003)).  MTO relies solely on *Thron v. HarperCollins Publishers, Inc.*, No. 01 Civ. 5437 (JSR), 2002

8

WL 1733640 (S.D.N.Y. July 26, 2002). There, Judge Rakoff held that "since the copyright registration was invalid, the information relating thereto did not constitute 'copyright management information' as defined in [the DMCA]," and therefore plaintiff failed to state a DMCA claim by alleging "digital alterations" to his purportedly copyrighted photographs. *Id.* at *1. As Playboy persuasively notes, however, *Thron* "does not address . . . circumstances where a defendant purposefully attaches false CMI to unregistered copyright material in order to mask its misappropriation." Playboy Br. 19.

## CONCLUSION

For the foregoing reasons, the Court denies MTO's motion to dismiss. The Clerk of Court is respectfully directed to close the motion pending at docket 27.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: March 8, 2016
       New York, New York