# FROSS ZELNICK LEHRMAN & ZISSU, P.C.

**Partners**
Ronald J. Lehrman
Stephen Bigger
Roger L. Zissu
Richard Z. Lehv
David Ehrlich
Susan Upton Douglass
Peter J. Silverman
Lawrence Eli Apolzon
Barbara A. Solomon
Mark D. Engelmann
Nadine H. Jacobson
Andrew N. Fredbeck
Craig S. Mende
Allison Strickland Ricketts
John P. Margiotta
Lydia T. Gobena
Carlos Cucurella
James D. Weinberger
David Donahue
Nancy E. Sabarra
Charles T. J. Weigell III
Laura Popp-Rosenberg
Cara A. Boyle
Karen Lim

**Senior Counsel**
Janet L. Hoffman

**Counsel**
James D. Silberstein
Joyce M. Ferraro
Robert A. Becker
Tamar Niv Bessinger
Nancy C. DiConza

**Associates**
Jason Jones
Leo Kittay
Todd Martin
Robin N. Baydurcan
Sherri N. Duitz
Amanda B. Agati
Jennifer Insley-Pruitt
Emily Weiss
Ashford Tucker
Erica Gould
Matthew Frisbee
Celadon Whitehurst
Hindy Dym
Katherine Lyon Dayton
Maritza C. Schaeffer
Felicity Kohn

May 27, 2016

**BY ECF**

Hon. Paul A. Engelmayer, U.S.D.J.
United States District Court for
the Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

Re: *Playboy Enterprises International, Inc. v. Mediatakeout.com*,
No. 15-cv-7053 (PAE)

Dear Judge Engelmayer:

We represent Defendant Mediatakout.com, LLC ("MTO") in this action. Pursuant to the Court's Order of May 24, 2016, we write this letter "reporting on [our] client's document preservation efforts and on its progress in locating documents responsive to plaintiff's discovery requests." (ECF No. 80). Based on our investigation, and discussions with and representations from MTO, counsel can report as follows.

MTO is a small company based in New York City. Its principal, a graduate of Columbia Law School, owns, operates and maintains the MTO website. MTO's principal was the only person involved in the acquisition and posting of the Azealia Banks images at issue in the lawsuit. Ms. Notoya Green, MTO's principal's spouse, is a graduate of Fordham University Law School. Ms. Green is in-house counsel for MTO.

MTO's principal uses a single MAC Book Pro computer to operate MTO's business. This same MAC Book Pro computer has been used by MTO to run its business at all times relevant to this lawsuit, *i.e.*, from March 2015 to the present.

Prior to the appearance in March 2016 of MTO's prior counsel, Al Daniel, Esq., MTO was represented in this lawsuit solely by Ms. Green. We have confirmed that, following service of the Complaint in this action in October 2015, Ms. Green did not issue a formal written "litigation hold" memorandum to MTO informing MTO of its duty to preserve relevant documents of the type discussed in *Zubulake v. UBS Warbug, LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003). However, given the close nature of the relationship between Ms. Green and MTO's principal (spouses), the small size of MTO, and that both Ms. Green and MTO's principal are attorneys who have advised that they were aware of MTO's obligation to preserve documents relevant to this action, MTO respectfully submits that no formal written "litigation hold" memorandum was necessary. *See, e.g., Orbit One Commc'ns, Inc. v. Numerex Corp.*, 271 F.R.D. 429, 441 (S.D.N.Y. 2010) ("[I]n a small enterprise, issuing a written litigation hold may not only be unnecessary, but it could be counterproductive, since such a hold would likely be more general and less tailored to individual records custodians than oral directives could be. Indeed, under some circumstances, a formal litigation hold may not be necessary at all.") (citations omitted).

{F1959164.5 }

866 United Nations Plaza at First Avenue & 48th Street | New York, New York 10017
Phone 212.813.5900 | Fax 212.813.5901 | www.frosszelnick.com

Below are the following sources of documents/ESI that potentially contain information responsive to Plaintiff's document requests, along with an explanation of MTO's preservation efforts and ability to collect material from these sources.

- **Email:** MTO's principal maintains an MTO email account using the Google Apps For Work platform. MTO has access to all of its principal's emails. MTO's principal advises that at all times relevant to this case, he has chosen the "*Do not delete email messages automatically*" setting on MTO's Google Apps For Work account. Moreover, he represents that he has not purposefully placed in the "Trash" folder or otherwise purposefully deleted any emails that might be relevant to this action.

- **Adobe Photoshop**: MTO's principal uses the Adobe Photoshop program on his computer to create images (*e.g.*, JPEGS) for uploading onto MTO's website. MTO's principal advises that he has not purposefully deleted any image files that might be relevant to this action and that MTO has never employed an automated deletion procedure for any image files saved in the Adobe Photoshop program on MTO's principal's computer. MTO has now produced to Plaintiff the original JPEG files of the at-issue images in this lawsuit that were created by MTO's principal on March 17, 2015 in Adobe Photoshop—*i.e.*, the JPEG files as they exist on MTO's computer after the images were obtained from the Internet, including the metadata showing the date the images were created and modified.

- **Mozilla Firefox Internet Browser:** MTO's principal uses Mozilla Firefox almost exclusively as his Internet browser for work in connection with MTO's business. Because MTO's principal obtained the at-issue images from the Internet, his Internet browser history may be relevant to try to determine from which website he obtained the at-issue images, since he has no recollection from which site he obtained them. The web-content cache for Mozilla Firefox on MTO's principal's computer is 350 MB. Based on MTO's principal's normal usage of his computer, the 350 MB browser history contains only three months of cached content (*i.e.*, he can only see the websites he visited on a date certain going back three months). Thus, even after the Complaint in this action was served on October 8, 2015, MTO likely would not have been able to review MTO's principal's browser history prior to July 2015—nearly four months after MTO's principal copied the at-issue images from a website on the Internet. Accordingly, while MTO no longer has access to browser history for March 17, 2015, MTO does not believe that this history was deleted or removed following notice of this lawsuit—rather, it believes that the history was deleted in the normal course of the operation of Mozilla Firefox's web-content cache limitation many months before this lawsuit was filed and served.

- **MTO's Website:** MTO's website is a constantly-evolving blog that adds content and removes old content on a daily basis. MTO does not have a copy of its website as it appeared on the date the Complaint in this case was served. However, the Internet Archive's Way Back Machine, of which several courts, including within this District, have taken judicial notice,[1] contains archived screenshots of the MTO website page containing the Banks article (although not the webpages containing the two other linked images). Moreover, as set forth below, MTO has access to various sources of data from which information about MTO's website's contents during the relevant time period may be obtained:

    o **Content Management System ("CMS"):** MTO's website uses the WordPress CMS to manage the content of the MTO website. MTO's principal advises that he has not purposefully deleted any content from the CMS that might be relevant to this action and that MTO has never employed an automated deletion procedure for any content in its CMS system. Indeed, MTO has produced a log entry from MTO's CMS system dating back to March 17, 2015 showing when the Banks article and at-issue images associated with the article were uploaded to MTO's website. MTO can do this because it continues to have access to all CMS entries for the MTO website.

    o **MTO's Website Hosting Service and Servers**: At all times relevant to this lawsuit, *i.e.*, from March 2015 to the present, the host for MTO's website as it relates to non-image content is a company called Internap. MTO has "dedicated servers" for the MTO website at Internap, which means the servers are dedicated to the production and maintenance of the non-image content on MTO's website. MTO has access to these servers. MTO's principal advises that he has not purposefully deleted any content from these servers that may be relevant to this proceeding and that MTO has never employed any automated deletion procedure for any content on its Internap servers. MTO can obtain a "database entry log" for the Azealia Banks article that first appeared on the MTO website on March 17, 2015. This log would show all database entries associated with this article, including the date it was posted and any modifications to the non-image content that were made, if any. MTO is speaking with Internap about the cost and time associated with generating such a database entry log. Alternatively, MTO advises that it could provide Plaintiff with the database entry log for the entire MTO website, but this would be a very large file (estimated around 1.5 gigabytes). In either case, MTO does not believe that producing such a log would provide any useful

---

[1] *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 2013 WL 6869410, at *4 n.65 (S.D.N.Y. Dec. 30, 2013) (citing cases), *vacated in part on other grounds*, 2015 WL 9777725 (S.D.N.Y. Dec. 7, 2015).

information beyond what is already shown in the CMS log that has already been produced to Plaintiff.

- **MTO's Image Hosting Service and Servers**: In March 2015, the images on MTO's website were hosted by EdgeCast, which was subsequently acquired by the current host, Verizon. Verizon maintains non-dedicated servers for the hosting of images on MTO's website. As prior counsel previously advised Plaintiff's counsel, the code for MTO's website contains an automated process that removes all photographs from any story MTO posts on its website thirty days after the photographs are posted. In other words, MTO has advised that the website code removes images from Verizon's servers such that they are no longer hosted and no longer appear on the MTO website. Verizon/Edgecast has advised MTO that it did not maintain logs (or "analytics") for the images that have been removed from the MTO website. MTO's principal spoke with a Verizon Digital Media Services Support engineer employee named Shen Sabo on April 7, 2016 and was informed that no such analytics exist and that such analytics cannot be retroactively created now concerning any previously-removed images.

- **MTO Site Code**: MTO has access to (and can provide) the website code for the MTO website that ran during the relevant time period in this case. This website code includes information and code showing the removal of images from the MTO website after 30 days. MTO can produce the code, although it notes that it will be difficult for anyone without computer or website programming experience to understand its contents.

- **Google Analytics**: At all times relevant to this lawsuit, MTO has maintained an account with Google Analytics, which provides various data concerning traffic to the MTO website. MTO has already produced Google Analytics reports showing the total number of ad-generating clicks to MTO's website and the Banks article, respectively, from March 17, 2015 through June 22, 2015.

- **Revenue Information**: Documents already produced by MTO show amounts MTO received from all of its advertising revenue sources during the March – June 2015 time period. MTO has an online account with these companies. MTO's principal may log on to MTO's online account with any of these advertisers at any given moment to see how much revenue MTO accrued on a daily, weekly or monthly basis during this time frame. MTO's principal does not in the ordinary course of business print or download any reports of the information maintained by these companies in MTO's online account. But MTO can request that each of these companies run an official

        report showing the advertising revenue accrued to MTO from March 17-April 17, 2015 (when the at-issue images were up on MTO website) and from March 17, 2015 through June 22, 2015 (the entire time Playboy was allegedly an exclusive licensee of any rights in the images). In addition, MTO is speaking with the companies from which it received ad revenue during this time period to see if these companies can run official reports showing each amount of advertising revenue received by MTO during this same period for each of the 521,209,100 clicks to MTO's website during this time. If these companies can run such reports, MTO will inquire about the time and cost associated with generating such reports, since the reports would be extremely large, covering hundreds of millions of clicks.

                      \*                          \*                         \*

The above recitation reflects what our firm has been able to determine through the investigation that we conducted immediately following the May 23, 2016 telephone conference that led to the Court's Order dated May 24, 2016. While we believe that we have identified all major sources of responsive materials, we will continue to work with MTO to identify any additional sources and to locate relevant documents within MTO's control. We will promptly supplement MTO's discovery responses and our above recitation to the Court should we learn of any additional relevant information or documents.

Respectfully submitted,

David Donahue

cc:     All counsel (by ECF)